UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GAZEBO REAL ESTATE, LLC, AGREE
CONVENIENCE NO. 1, LLC, and AGREE
DEVELOPMENT, LLC,

        Plaintiffs,

v.

CITY OF WARREN,

        Defendant.

Case No. CaseNumber

Hon. JudgeName

      /

## COMPLAINT, CLAIM OF APPEAL AND DEMAND FOR JURY TRIAL

Plaintiffs Gazebo Real Estate, LLC, Agree Convenience No. 1, LLC and Agree Development, LLC ("Plaintiffs") hereby state as follows for their Complaint and Claim of Appeal against Defendant City of Warren (the "City"):

### INTRODUCTION

1.    Plaintiff Gazebo Real Estate, LLC owns property in the City which it has agreed to sell to Plaintiff Agree Development, LLC for redevelopment. The City blocked that redevelopment by wrongfully denying approval of a site plan application and, in so doing, violated Plaintiffs' civil rights.

2.    The Planning Commission was responsible for approving the site plan, and multiple Planning Commissioners acknowledged that the Application followed the City's ordinances and had to be approved:

75432013.8

*"I know this project meets all the requirements with our City, we know it does."*

Commissioner Mouri

*"The petitioner has gone over and above what could and should be there and they've done a terrific job on changing per meeting, it's actually a very good site plan."*

Commissioner Duzyj

*"Today Speedway came in and they followed all the ordinances; there was no variance needed. That means that the Planning Department has to take their petition and also as Commissioners we have to follow the same thing and approve it."*

Commissioner Ansar

3. Rather than approve the Application, the Planning Commission tabled it six separate times, asking for more information.

4. Plaintiffs did everything the City asked—and more. In addition to submitting a site plan that satisfied every requirement of the Ordinance, Plaintiffs also worked cooperatively with City staff, responded to public comments, submitted and updated traffic studies, addressed questions from adjoining property owners, coordinated with the Macomb County Department of Roads ("MCDR"), modified driveway access, and provided additional engineering information and responses. The City's own Planning Department recommended approval at every opportunity. No reviewing department or qualified expert identified any valid basis to deny the Application.

2

75432013.8

5. But the Planning Commission, once it finally considered the Application, denied it based on generic "safety concerns" unsupported by any evidence in the record and untethered to any Ordinance standard.

6. The denial was driven by neighbor opposition, personal animus against gas stations, and shifting extra-Ordinance demands—not by legitimate site plan review procedures or requirements.

7. That is unlawful.

8. In fact, under Michigan law and the Ordinance, site plan approval is *mandatory* when a site plan meets the minimum objective standards as stated in the zoning ordinance. Once Plaintiffs submitted a compliant site plan for a permitted use, the Planning Commission was required to apply the governing standards in good faith and approve the site plan.

9. The Planning Commission did not do so.

10. In refusing to approve the site plan, the City, through the Planning Commission, violated Michigan law, the Ordinance, and Plaintiffs' constitutional rights.

11. Plaintiffs bring this action to vindicate their constitutional and statutory rights, to obtain a declaration that the Application satisfies all applicable Ordinance standards, to compel approval of the site plan, and to recover all damages and other relief available under law.

75432013.8

## PARTIES, JURISDICTION, AND VENUE

12. Plaintiff Gazebo Real Estate, LLC ("Gazebo") is a limited liability company organized under the laws of the State of Michigan with its principal place of business in Warren, Michigan.

13. Plaintiff Agree Convenience No. 1, LLC ("Agree Convenience") is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Royal Oak, Michigan.

14. Plaintiff Agree Development, LLC ("Agree Development") is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Royal Oak, Michigan.

15. Defendant City of Warren is a municipal corporation organized and existing under the laws of the State of Michigan. The City Planning Commission's ("Planning Commission") is a part of the City.

16. This Court has subject matter jurisdiction over Plaintiffs' federal constitutional claims pursuant to 28 U.S.C. § 1331 because they arise under the United States Constitution and 42 U.S.C. § 1983.

17. The Court also has supplemental subject matter jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367, as those claims arise from the same nucleus of operative facts as the federal claims.

4

75432013.8

18.     This action is also brought as a Claim of Appeal under MCL 125.3606, or, alternatively, under Michigan Constitution article VI, § 28, which authorizes courts to review all final decisions of administrative bodies that are quasi-judicial in nature and affect private rights.

19.     The Sixth Circuit has specifically recognized that a federal district court may exercise supplemental jurisdiction over a state-law zoning appeal where the zoning appeal involves the same factual issues as related federal claims.  *Hucul Advertising, LLC v Charter Twp. of Gaines*, 748 F.3d 273, 280–281 (6th Cir. 2014).

20.     Plaintiffs' Claim of Appeal is timely pursuant to MCR 7.122(B).

21.     Plaintiffs are "aggrieved" for purposes of appellate review. *See Beverly Hills Racquet & Health Club, Ltd. v. Vill. of Beverly Hills Zoning Bd. of Appeals*, No. 361202, 2024 WL 3216459, at *5 (Mich. Ct. App. June 27, 2024) ("Being unable to develop the parcel as planned was 'an actual or likely injury' different from others in the community."). Gazebo currently owns the Property and requires site plan approval to sell the Property. Agree Convenience, as Gazebo's designated representative in the Application, submitted the Application and expended time, money and resources on the Application including obtaining studies, analyses, and revisions. Agree Development has a binding purchase agreement with Gazebo conditioned on site plan approval and thus holds a legal interest in the Property that has been directly harmed by the Planning Commission's unlawful denial.

5

22.     Venue is proper in this District under 28 U.S.C. § 1391 because the City of Warren is located in this District and a substantial part of the events giving rise to the claims occurred in this District.

## GENERAL ALLEGATIONS

23.     Agree Development (and its affiliates) comprise a real estate development firm that has successfully developed, owned and operated thousands of retail properties throughout the country.

24.     In around 2025, Agree Development sought to construct a new first-class Speedway and 7-11 convenience store on property located at the northeast corner of the intersection of Mound Road and Thirteen Mile Road, 31104 Mound Road, Warren, Michigan (the "Property")—which is currently improved with a banquet center.

25.     The Property is zoned M-2 (Industrial).

26.     Under the City's Zoning Ordinance ("Ordinance"), a convenience store with gas services is a use that is permitted by right in the M-2 zoning district. *See* Ord. § 17.02(f) (authorizing "Commercial Business as regulated in this Ordinance" in the M-2 district); Ord. § 13.01(b) (defining Commercial Business to include "[g]enerally recognized retail businesses, which supply commodities on the premises," including "Gasoline and Oil Service Stations").

6

75432013.8

27. A convenience store with fuel services is a use undisputably permitted by right under the Property's existing Industrial M-2 zoning classification.

28. Plaintiffs sought approval of a site plan for such a use (the "Application").

29. No rezoning, variance, special land use approval, or other discretionary zoning relief was required.

30. The only approval required was site plan approval under the Ordinance.

31. Plaintiffs submitted a site plan that complied with every applicable Ordinance requirement and therefore was required by law to be approved.

32. In fact, certain Planning Commissioners admitted as much, as set out in Paragraph 2, above.

33. While permitted by right in M-2 districts, Gasoline and Oil Service Stations have routinely received site plan approval from the Planning Commission in more restrictive zoning districts than M-2 over the past three years.

34. The Planning Commission has approved at least six such site plans in the last three years.

35. On July 24, 2025, Agree Development entered into an agreement with the current Property owner, Gazebo, to purchase the Property.

75432013.8

36.     Agree Development's purchase of the Property is contingent on receiving certain regulatory approvals, including obtaining site plan approval from the City.

### *The Process for Site Plan Approval in the City*

37.     In Michigan, local units of government have no inherent authority to engage in zoning, and can only act based on specific statutory authority granted by the state legislature.

38.     The Michigan state legislature has delegated to municipalities, including the City, certain authority by way of the Michigan Zoning Enabling Act, MCL 125.3101, *et seq.* ("MZEA").  The City may regulate land use through zoning only to the limited extent authorized by the MZEA.

39.     Under the MZEA:

a.     A decision rejecting, approving, or conditionally approving a site plan shall be based upon requirements and standards contained in the zoning ordinance, other statutorily authorized and properly adopted local unit of government planning documents, other applicable ordinances, and state and federal statutes, MCL 125.3501(4); and

b.     A site plan **shall be approved** if it contains the information required by the zoning ordinance and is in compliance with the conditions imposed under the zoning ordinance, other statutorily authorized and properly adopted local unit of government planning documents, other applicable ordinances, and state and federal statutes, MCL 125.3501(5) (emphasis supplied).

75432013.8

40.     The City adopted a zoning ordinance under the authority of the MZEA. *See* Zoning Ordinance of the City of Warren, Ordinance No. 30, adopted on July 21, 1960, as amended.

41.     In connection with the Ordinance, the City has adopted certain provisions related to the administration of the Ordinance, including Section 22.16, which governs site plan review.  *See* Ord. § 22.16.

42.     Section 22.16 provides that a property owner must obtain approval of a site plan prior to the City issuing a building permit for construction of a commercial or industrial development.  Ord. § 22.16.B(1)–(2).

43.     To seek approval of a site plan, a property owner, or its authorized representative, must submit an application to the Planning Commission.  Ord. §§ 22.16.B(2) and 21.04.

44.     Section 22.16.B sets forth the requirements that a site plan applicant must satisfy and the standards by which the Planning Commission may review a site plan application.

45.     Under Section 22.16.B(1), the applicant must submit a site plan "showing the location of the principal building or use, general dimensions and proposed height, the location of all accessory buildings, the location of parking areas or driveways, the proposed grade and drainage, the proposed methods of water supply and sewage disposal, the proposed plantings and proposed screening and a

9

75432013.8

building plan to the Fire Commissioner showing proposals for fire safety, fire separation, and egress for life safety." Ord. § 22.16.B(1).

46. Section 22.16.B(1) limits the Planning Commission's review to specific criteria: "The approving authority shall review such site plan for space and orientation of buildings in relation to off-street parking and ingress and egress to the site; for safety convenience and adequacy of vehicular and pedestrian circulation; for adequacy of landscaping and proposed site improvements and overall conformity to provisions of the Master Plan of the City of Warren for conformity of the uses to the district."

47. Section 22.16.B(4) then mandates that the Planning Commission "shall approve" a site plan upon a finding that: (a) "the proposed use will not, upon the facts known at the time of submission of the site plan, cause undue hardship or create unsafe or hazardous health, or safety conditions or create a nuisance condition to the detriment of adjoining land uses or the general public," and (b) "the plan contains the information required by this Ordinance and is in compliance with this Ordinance, the conditions imposed pursuant to this Ordinance, other applicable Ordinances and state and federal statutes."

48. Under Section 22.16.B(4), "[a]n approval or denial of a site plan *must* be based on the standards for review of special land uses set forth in Section 22.14.B of this Ordinance." (Emphasis added).

10

49. Section 22.14.B sets forth the following "general standards" for review:

    a. The proposed use is compatible with adjacent uses of land;

    b. The proposed use is compatible with adjacent uses of land that may be located outside of the City, after considering comments of citizens residing outside of the City of Warren who receive notice of the public hearing from the adjacent municipality after their municipality receives notice from the City of Warren that describes generally a geographic area of land located within three hundred (300) feet of the boundary of the property within the City of Warren.

    c. The proposed use is in compliance with the standards of this Ordinance and the conditions imposed thereunder;

    d. The proposed use is compatible with the natural environment;

    e. The proposed use is compatible with the capacities of the public services and facilities affected by the proposed use; and

    f. The proposed use is consistent with the public health, safety and welfare of the City.

Ord. § 22.14.B(1).

50. The Ordinance confirms that only minimum compliance is needed: "In interpreting and applying the provisions of this Ordinance, they shall be held to be the minimum requirements for the promotion of the public health, safety, convenience, comfort, prosperity and general welfare." Ord. § 25.01.

51. The Planning Commission's review of a site plan is an administrative function and it acts in its administrative capacity when it considers an application for site plan approval.

11

52.     The Planning Commission's limited role in reviewing a site plan is only to determine whether it complies with the Ordinance.  MCL 125.3501(4).

53.     The Planning Commission must approve a site plan that contains the information required by, and complies with, the Ordinance.  MCL 125.3501(5) ("A site plan *shall* be approved if it contains the information required by the zoning ordinance and is in compliance with the conditions imposed under the zoning ordinance…") (emphasis added).

54.     The Planning Commission does not have unfettered discretion to deny a site plan.  Instead, all site plan decisions must be based upon requirements and standards contained in the Ordinance and supported by competent, material, and substantial evidence.  MCL 125.3501(3)–(4); MCL 125.3606(1).

## *Plaintiffs Apply for Site Plan Approval*

55.     On or about November 11, 2025, Agree Convenience, as Gazebo's authorized representative, submitted the Application for site plan approval of the proposed Speedway convenience store and gas station to the Planning Commission.

56.     The Application was prepared with the assistance of CESO, Inc. ("CESO"), a nationally recognized architectural and engineering design firm.

57.     The Application's first submission included the City's application forms, a site plan, landscape plan, photometric plan, survey, floor plan, building elevation, and canopy elevation.  (Ex. 1.)

12

58. CESO Engineering Manager, Robert E. Matko, P.E., P.S., PTOE, licensed professional engineer in the State of Michigan, also performed a Traffic Impact Analysis, although the Ordinance does not require it. (Ex. 2.)

59. The Traffic Impact Analysis concluded that the development of a convenience store with gas services on the Property would not cause any significant increase in traffic. (*Id.*)

60. The Application satisfied every requirement of the Ordinance.

61. City staff reviewed Plaintiffs' Application and Traffic Impact Analysis and recommended that the Application be approved.

### *The December 15, 2025 Planning Commission Meeting*

62. The Planning Commission held the first public hearing on the Application on December 15, 2025.  (Ex. 3, 12/15/2025 PC Meeting Minutes.)

63. Members of the Planning Commission expressed negative views of the proposed development, not based upon any Ordinance standard, but their personal animus to any new development with gas services and "NIMBY" neighbors.[1]

---

[1] "The generalized complaints effectively amount to NIMBY—not in my backyard." *Wineries of the Old Mission Peninsula Ass'n v Peninsula Twp.*, No. 1:20-CV-1008, 2025 WL 1859905, at *1 (W.D. Mich. July 7, 2025) (awarding nearly $50 million in damages where township "repeatedly and pervasively violated the Wineries' constitutional rights" through unlawful zoning restrictions and the prohibition of events on winery properties).

75432013.8

64.     Commissioner Duzyj expressed his personal feelings about the development stating, "I'm really not a big fan of this development.  I don't think it fits and coming into the historical district I think you're putting something in that doesn't fit as you're going north on Mound Road." (*Id*. at 18.)

65.     Commissioner Ansar admitted that Plaintiffs' Application met the requirements for site plan approval, but also expressed his personal dissatisfaction with the proposed development:

> COMMISSIONER ANSAR: "*Today Speedway came in and they followed all the ordinances*; there was no variance needed.  That means that the Planning Department has to take their petition and also as Commissioners *we have to follow the same thing and approve it*."
>
>                             \*\*\*
>
> Do we really need that many gas stations, too many.  Commissioner Duzyj doesn't agree with the new Speedway, I don't agree with it either, but how can we deny this.
>
> COMMISSIONER DUZYJ: We have the ability to turn something down for health, safety, and welfare reasons … Health, safety, and welfare; if we have something in that preview, then that's a legal reason to knock something down.
>
> COMMISSIONER ANSAR: *You can deny any plan and say safety*, like we approved the Ten Mile Ryan, a collision, *I can say it's a safety reason and I don't want it, you know what I mean.  My main concern is do we really need that many gas stations.*  We need a strong ordinance that's going to be good for the City and the neighborhood.  The City Council and City Attorney need to review the ordinance and come up with a change that is needed right now.
>
> That is my request.  You see the frustration from the residents, so those ordinances need to be reviewed so we don't get that blame.

14

75432013.8

People are blaming Planning Commission and the Planning Departments saying we are approving too many gas stations.  That is my concern.

(*Id*. at 28–29 (emphasis added).)

66.     The Planning Commission requested more time to review the Application, including the Traffic Impact Analysis, and tabled the Application without decision until the January 12, 2026 Planning Commission meeting.

### *January 12, 2026 Planning Commission Meeting*

67.     The Planning Commission held a second hearing on the Application on January 12, 2026.  (Ex. 4, 1/12/2026 PC Meeting Minutes.)

68.     The City's Planning Department professional staff reviewed the Application and recommended approval of the site plan with standard conditions.  (Ex. 5, Planning Director Recommendations for 1/12/2026.)

69.     Multiple Commissioners admitted on the record that the Application met the Ordinance requirements, but voiced their personal displeasure with the proposed development.

70.     For example, Commissioner Mouri stated, "Considering we are already thinking, and I know this something the attorney mentioned, *we don't want this many gas stations in the City of Warren.  Even though it meets every single requirement* I do want to see what type of impact it's going to have to the community."  (Ex. 4, 1/12/2026 PC Meeting Minutes at 17 (emphasis added).)

75432013.8

71. Commissioner Ansar stated, "*as a Commissioner I think that we have too many gas stations.* So, when my colleague motioned for a postponement I was like okay, give them a chance to talk to people otherwise I would say no." (*Id.* (emphasis added).)

72. Commissioner Hoque stated, "*Even though you meet all the requirements,* we still have to think about the public safety, and we have to listen to the people living in the City. So, I believe, at this time we need further discussion, and I support postponing this item." (*Id.* at 18 (emphasis added).)

73. The Planning Commission again voted to postpone a decision on the Application.

74. What is more, the Planning Commission directed Plaintiffs to consult with a neighboring property owner, General Motors ("GM"), to address GM's concerns about traffic impact of the proposed development. The Planning Commission also instructed Plaintiffs to obtain approval from MCDR to construct driveways larger than 30 feet wide (the width imposed by MCDR) for trucks entering the gas station. Neither of these things is required for site plan approval under the Ordinance, but Plaintiffs endeavored to complete them nonetheless.

75. At the same meeting, the Planning Commission also voted to recommend that the City Council impose an eight-month moratorium on development of any new gasoline stations or car wash facilities in the City.

16

75432013.8

76.     The City's Planning Director, Ron Wuerth, told the Planning Commission that the reason for a moratorium is to allow the Planning Commission to add another layer of review that would require a special land use procedure, additional design and locational criteria and the potential to require a specific traffic study that weighs the proposed addition of traffic and traffic movements (which is not a requirement in the Ordinance).

77.     Although a convenience store with gas services is a permitted use by right for the Property, Commissioner Ansar stated, "I personally think that gas stations are just too much." (*Id.* at 25.)

78.     Following the Planning Commission's recommendation, in May of 2026, The City Council imposed the eight-month moratorium.

79.     At the next two Planning Commission meetings, on January 26, 2026, and February 9, 2026, the Planning Commission again voted to postpone a decision on the Application without any discussion or justification given to Plaintiffs.

***Plaintiffs Work to Satisfy the Planning Commission's Extra-Ordinance Demands***

80.     Although not required under the Ordinance, Plaintiffs satisfied the Planning Commission's demand to address GM's traffic impact concerns and obtain MCDR's permission to exceed its driveway width requirements.

81.     At great effort, representatives of Plaintiffs connected with the appropriate GM representatives and Plaintiffs discussed their traffic study with GM.

17

Plaintiffs thereafter voluntarily amended their site plan to only allow traffic to exit the Property on Mound Road. (Ex. 6.)

82.     GM's third-party traffic engineer, Kimley-Horn, reviewed the amended site plan and Traffic Impact Analysis and found them acceptable.  (Ex. 7, GM Email of Approval).

83.     Plaintiffs also worked with Robert Bush, Permits and Local Road Department Manager for MCDR, who agreed to permit adjustments to the curbs and permit the 40-foot-wide driveways.  (Ex. 8, MCDR Email.)

84.     Additionally, Plaintiffs confirmed that fuel truck deliveries would occur between approximately 1:00 a.m. and 5:00 a.m. to avoid peak traffic times, directly addressing the Planning Commission's driveway and delivery concerns.

### *The February 23, 2026 Planning Commission Meeting*

85.     The Planning Commission held another meeting on the Application on February 23, 2026, at which time Plaintiffs presented updates to the Application.

86.     Plaintiffs revised the site plan to remove a left turn from the Property onto Thirteen Mile Road at GM's request.

87.     Plaintiffs revised curbs and driveway widths with MCDR's approval.

88.     Plaintiffs also updated the Traffic Impact Analysis with updated traffic counts to address public comments related to the days when counts were conducted.

18

The updated Traffic Impact Analysis confirmed that the development would not cause any increase in traffic impact in the surrounding area. (Ex. 9.)

89. The City Planning Department staff reviewed the original and updated traffic studies and again recommended approval of Plaintiffs' site plan. (Ex. 10, Planning Director Recommendations for 2/23/2026.)

90. Despite Plaintiffs making the specific changes to the Application and submitting additional information at the request of the Planning Commission, Commissioner Hoque, Commissioner Ansar, and Commissioner Duzyj voted to deny the Application, listing generic "safety concerns" as their basis for voting to deny. The Commissioners did not provide any material and competent evidence in support of their purported "safety concerns" or even a specific reason the project would be "unsafe."

91. Four Commissioners voted to approve the Application. However, the City contended that the Application was required to be automatically tabled because a minimum of five votes was supposedly necessary to decide an application for site plan approval.

92. Plaintiffs' Application was tabled again.

75432013.8

*The March 23, 2026 Planning Commission Meeting*

93.   Prior to the March 23, 2026, Planning Commission meeting, the City Planning Department again recommended that Plaintiffs' site plan be approved. (Ex. 11, Planning Director Recommendations for 3/23/2026.)

94.   However, the Application was tabled with no discussion at Plaintiffs' request due to the absence of a Commissioner.

*The City Denies Plaintiffs' Application for Site Plan Approval*

95.   Prior to the April 13, 2026, Planning Commission meeting, the City Planning Department staff again recommended approval of Plaintiffs' site plan. (Ex. 12, Planning Director Recommendations for 4/13/2026.)

96.   Several Planning Commissioners acknowledged that the Application satisfied the requirements of the City's Ordinance.

97.   Commissioner Mouri stated, "**I know this project meets all the requirements with our City, we know it does**."  (Ex. 13, 4/13/26 PC Meeting Minutes at 14 (emphasis added).)

98.   Similarly, Commissioner Duzyj stated, "The petitioner has gone over and above what could and should be there and they've done a terrific job on changing per meeting, it's actually a very good site plan."  (*Id.* at 13.)

99.   Despite this, the Planning Commission denied the Application by a vote of 5–2.  Each Commissioner who voted to deny cited only generic "safety concerns"

20

75432013.8

as the basis for denial.  Again, they did not provide any material and competent evidence in support of their purported "safety concerns" or any specific reason the project would be "unsafe."

100.   Commissioners Holowaty and Mouri, who had previously voted to approve the project at an earlier meeting, switched their votes to denial despite no changes to the site plan.

***Plaintiffs' Application Satisfies All Ordinance Standards***

101.   The Application satisfies every objective standard set forth in the Ordinance for site plan approval.

102.   Under Section 22.14.B(1)(a), the proposed use of the Property (a convenience store with gas service) is compatible with the adjacent uses of land.

103.   The Property and nearby properties are all zoned for a mix of industrial and commercial uses.

104.   The opposite corner of the same intersection of the Property already has a Marathon gas station.

105.   The adjacent properties include the Marathon gas station, a car wash, fast food restaurants, a bank, and GM's M-3 industrial use property (a more intense use than the proposed convenience store and gas station).

106.   Plaintiffs' proposed C-1 use is a less intense use than what is permitted by right on M-2 zoned property.

21

75432013.8

107. The adjacent uses of land are clearly compatible with a convenience store with gas services as they are all currently adjacent to the Marathon gas station.

108. Indeed, the Planning Commission has approved other gas station developments in more restrictive zoning districts in the vicinity of the Property, including:

a. a Kum & Go gas station and convenience store located on the southwest corner of Fourteen Mile Road and Hayes Road, at 15150-15050 Fourteen Mile Road, in C-1 zoning, approved April 24, 2023 (the "Fourteen Mile Kum & Go");

b. another gas station and convenience store located at the southwest corner of Ten Mile Road and Mound Road, in M-1 zoning, approved April 8, 2024 ("Ten Mile & Mound");

c. a Sheetz gas station and convenience store located at 5920 Twelve Mile Road and 28950 Mound Road, on the southeast corner of Twelve Mile Road and Mound Road, in C-2 zoning, approved August 19, 2024 (the "Mound Road Sheetz");

d. another Sheetz gas station and convenience store with drive-thru located on the southwest corner of Van Dyke Avenue and Murthum Avenue, at 31925 Van Dyke Avenue, in M-1 zoning, approved September 23, 2024 (the "Van Dyke Sheetz");

e. another gas station and convenience store located on the east side of Groesbeck Highway, approximately 1,109 feet from Frazho Road, at 26260 Groesbeck Highway, in C-3 zoning, approved December 16, 2024 (the "Groesbeck Gas Station"); and

f. another Sheetz gas station and convenience store located at the northeast corner of Twelve Mile Road and Dequindre Road, in C-1 zoning, approved June 16, 2025 (the "Dequindre Road Sheetz").

22

75432013.8

109.   The Planning Commission did not state any objective concerns about the proposed convenience store being incompatible with surrounding uses.

110.   Section 22.14.B(1)(b) is not applicable because the Property is not within 300 feet of another municipality.

111.   Under Section 22.14.B(1)(c), the proposed use of the Property complies with all standards of the Ordinance.

112.   The Property is zoned M-2, which permits by right a convenience store with gas services.

113.   The Planning Commission has repeatedly affirmed that convenience stores with gas services are permitted in the M-2 zoning district, including by approving similarly situated gas stations in more restrictive zoning districts, such as Fourteen Mile Kum & Go, Ten Mile & Mound, Mound Road Sheetz, Van Dyke Sheetz, Groesbeck Gas Station, and Dequindre Road Sheetz.

114.   The Planning Department reviewed the Application for compliance with the Ordinance and recommended approval four times, subject only to the imposition of standard conditions that would show compliance with other ordinances, such as the City's stormwater ordinance, as the project progressed. (Exs. 5, 10-12, Planning Department Recommendations.)

115.   In its denial, the Planning Commission did not identify a single Ordinance provision with which the Application does not comply.

75432013.8

116. Under Section 22.14.B(1)(d), the proposed use is compatible with the natural environment.

117. The Property is located in a commercial and industrial area.

118. Plaintiffs' site plan includes an underground detention system on the site to accommodate stormwater.

119. Plaintiffs' site plan also increases green space by 134%, increases tree count by 57%, adds nearly 200 shrubs to the Property, and includes a shaded walkway with a bench and garden area far exceeding the landscaping requirements in the Ordinance. (Ex. 1, Site Plan Application.)

120. Under Section 22.14.B(1)(e), the proposed use is compatible with the capacities of the public services and facilities affected by the proposed use.

121. No concerns were raised by the Planning Commission or any other department or person suggesting that public services would be unable to serve the proposed convenience store.

122. Under Section 22.14.B(1)(f), the proposed use is consistent with the public health, safety and welfare of the City.

123. Every qualified governmental agency and independent expert either approved the project or raised no concern. There is no objective, competent, material, or substantial evidence in the record demonstrating that the project creates a safety issue or fails to comply with any Ordinance requirement.

24

75432013.8

124.   Plaintiffs submitted the Traffic Impact Analysis, as amended, verifying traffic levels are expected to maintain "B" level service before and after the convenience store is built.

125.   Plaintiffs' Traffic Impact Analysis was reviewed by GM and its third-party traffic engineer Kimley-Horn without objection.  (Ex. 7.)

126.   The Application was reviewed by the Planning Department staff who recommended approval four times.  (Exs. 5, 10-12.)

127.   The Planning Commissioners referenced only vague "safety concerns" without any objective evidence to explain or show how the proposed use would be inconsistent with the public health, safety and welfare of the City.

128.   Additionally, the Michigan Supreme Court has held that a general standard of "public health, safety and welfare" is too subjective to be a standard at all because there is no objective guide to determine if such standard has been met or not.  *See Osius v. City of St. Clair Shores*, 344 Mich. 693, 699-700; 75 N.W.2d 25 (1956).

129.   All competent and material evidence submitted to the Planning Commission indicates there are no verified safety concerns that would warrant denying the Application.

25

130.   The Planning Commissioners' unsupported, subjective, "gut feeling" and ill-defined "safety factors" concern is not a permissible reason to deny the Application.

***Plaintiffs Appeal to the City Zoning Board of Appeals***

131.   On April 27, 2026, Plaintiffs filed a timely appeal to the City of Warren Zoning Board of Appeals ("ZBA"), pursuant to MCL 125.3604(1) and Ordinance Section 20.06, seeking reversal of the Planning Commission's denial.

132.   The MZEA provides that the ZBA "shall hear and decide appeals from and review any administrative order, requirement, decision, or determination made by an administrative official or body charged with enforcement of a zoning ordinance."  MCL 125.3603(1).

133.   The City has indicated that it does not believe the ZBA has jurisdiction to hear an appeal of the Planning Commission's denial of a site plan, and intends to deny the appeal on jurisdictional grounds.

134.   On May 1, 2026, Planning Commission Secretary Mouri issued a written denial letter "document[ing] the written decision of the Commission."  (Ex. 14.)

135.   The May 1, 2026, letter states the basis for denial of Plaintiffs' Application "included traffic, general safety factors and compatibility with surrounding uses, along with other reasons as stated on the record."  (*Id.*)

26

***The City Has Approved Similarly Situated Gas Station and Convenience Store Developments***

136.    The Planning Commission has approved other similarly situated gas station and convenience store developments in the City.

***Fourteen Mile Kum & Go***

137.    On April 24, 2023, the Planning Commission approved the Fourteen Mile Kum & Go gas station and convenience store site plan. (Ex. 15.)

138.    The Fourteen Mile Kum & Go involved demolition and redevelopment of the property into a 4,000 square foot convenience store with fuel services, six multi-product dispensers with 12 fueling positions, 24-hour operations, food service, and alcohol sales.

139.    The Fourteen Mile Kum & Go application was approved subject to standard engineering, stormwater, road-permit, access, and site-plan conditions. The Planning Commission did not deny the application based on the number of gas stations in the City, 24-hour operations, traffic, public safety, or generalized concerns about the use.

***Ten Mile & Mound***

140.    On April 8, 2024, the Planning Commission approved the Ten Mile & Mound gas station with a convenience store site plan. (Ex. 16.)

27

141. Ten Mile & Mound and convenience store involved a complete redevelopment of the property, fuel services, convenience-store merchandise, and a food component.

142. During the April 8, 2024 hearing, the petitioner stated that the proposed hours of operation would be from 5:00 a.m. until midnight, or perhaps 24 hours per day, seven days per week.

143. The Planning Commission nevertheless approved that application unanimously with almost no discussion.

### Mound Road Sheetz

144. On August 19, 2024, the Planning Commission approved a site plan for the Mound Round Sheetz gas station and convenience store. (Ex. 17.)

145. The approved Mound Road Sheetz involved the redevelopment of the long-standing Victory Inn property into a gas station and convenience store with fuel services, restaurant-style food service, indoor seating, outdoor seating, and 24-hour operations.

146. During the August 19, 2024 hearing, residents and business owners raised concerns about the proposed Mound Road Sheetz materially similar to the concerns raised against the Application, including concerns about public safety, crime, 24-hour operations, liquor sales, the number of gas stations in Warren, harm to local businesses, traffic, and the effect on the surrounding community.

75432013.8

147.   The Planning Commission nevertheless approved the site plan for the Mound Road Sheetz unanimously at its first hearing.

148.   In approving the Mound Road Sheetz site plan, the Planning Commission acknowledged that its decision was controlled by the applicable standards in the Ordinance.  Commissioner Smith stated: "What we have to base our discussion on is the zoning and if it meets the ordinance and everything like that.  As long as it meets the ordinance, and as long as it meets all the requirements, we have an obligation to approve it."  (*Id*. at 30.)

149.   The Planning Commission did not deny the Mound Road Sheetz site plan based on generalized safety concerns, subjective opposition to gas stations, 24-hour operations, competition with other gas stations, or public NIMBY opposition.

*Van Dyke Sheetz*

150.   On September 23, 2024, the Planning Commission approved a site plan for the Van Dyke Sheetz gas station and convenience store. (Ex. 18.)

151.   The approved Van Dyke Sheetz involved a 6,139 square foot convenience store with fuel services, a drive-thru, seven fuel pumps, restaurant-style food service, indoor seating, outdoor dining, and 24-hour operations.

152.   During the hearing, residents and business owners opposed the Van Dyke Sheetz on grounds materially similar to the objections raised against Plaintiffs'

29

75432013.8

Application, including traffic, 24-hour operations, crime, oversaturation of gas stations, and harm to existing local gas-station businesses.

153. The Planning Commission nevertheless approved the Van Dyke Sheetz unanimously. In doing so, the Planning Commission again acknowledged that its role was to apply the Ordinance, not to deny a compliant site plan based on generalized opposition. Chair Smith stated: "our job as a Commission is to look at the plan, see if it agrees with all the ordinances and if it agrees we have to approve it." (*Id*. at 20.)

### Groesbeck Gas Station

154. On December 16, 2024, the Planning Commission approved the Groesbeck Gas Station and convenience store with drive-thru. (Ex 19.)

155. The approved Groesbeck Gas Station involved a gas station, convenience store, and drive-thru restaurant component. The petitioner represented that the project would provide 24 hours convenient access to goods, drinks, and gasoline. The petitioner also had not yet selected the gas-station brand or the drive-thru restaurant operator at the time of approval.

156. The Planning Commission nevertheless approved the Groesbeck Gas Station unanimously. Commissioners praised the project as a "good location" and an "asset to the neighborhood and to the city," and did not deny the application based

30

on generalized concerns about gas stations, 24-hour operations, traffic, public safety, or the absence of a final gas-station brand or restaurant operator. (*Id*. at 8.)

***Dequindre Road Sheetz***

157. On June 16, 2025, the Planning Commission approved another Sheetz gas station and convenience store, the Dequindre Road Sheetz. (Ex. 20.)

158. The approved Dequindre Road Sheetz development also involved a gas station and convenience store with fuel services, food service, outdoor seating, and 24-hour operations.

159. The Dequindre Road Sheetz application also raised traffic concerns. Indeed, the Planning Commission postponed decision on that application pending a traffic study, and the final approval record included discussion of traffic operations, driveway access, fuel-truck deliveries, accident concerns, nearby schools, pedestrian safety, and other public-safety objections.

160. The traffic study for the Dequindre Road Sheetz concluded the proposed development would not negatively impact surrounding roadway operations and did not require mitigation measures.

161. Despite public comments opposing the Dequindre Road Sheetz on the basis of traffic, safety, fuel trucks, noise, lighting, crime, oversaturation of gas stations, and harm to local businesses, the Planning Commission approved that application unanimously on its second hearing.

31

75432013.8

162. Plaintiffs' Application is similarly situated to these approved gas station and convenience store applications because Plaintiffs sought approval for the same or a substantially similar use: a convenience store with fuel services on property where the use was permitted by zoning.

163. Plaintiffs' Application was at least as compliant with applicable Ordinance standards as the approved comparator applications.

164. Plaintiffs also made site-plan revisions requested by the Planning Commission and third parties, including revising driveway widths, revising traffic movements, coordinating with MCDR and a nearby property owner, and submitting updated traffic and engineering materials.

165. Despite treating the approved comparator applications as Ordinance-driven site plan reviews, the Planning Commission treated Plaintiffs differently.

166. The Planning Commission subjected Plaintiffs' Application to more onerous and shifting requirements than those applied to similarly situated applicants.

167. The Planning Commission tabled Plaintiffs' Application six times, required Plaintiffs to satisfy requirements not imposed by the Ordinance, required Plaintiffs to secure or address input from a private third-party, required additional traffic study materials, required access revisions, implored the City Council to impose a moratorium while Plaintiffs' Application was pending, and ultimately

32

denied the Application based on generic "safety factors" not tied to any objective Ordinance requirement.

168. The Planning Commission did not apply the same approach to the approved comparator applications.

169. The Planning Commission's differential treatment was irrational because Plaintiffs' Application satisfied the applicable Ordinance standards and presented no greater traffic, safety, operational, or compatibility concern than the approved comparator applications.

170. The Planning Commission's differential treatment was also arbitrary because City staff recommended that the site plan be approved, several Commissioners acknowledged that Plaintiffs' Application met the City's requirements, that Plaintiffs had followed the ordinances, and that Plaintiffs had submitted a "very good" site plan.

171. The City had no rational basis to deny Plaintiffs' compliant Application while approving similarly situated gas station and convenience store developments.

172. The Planning Commission's denial of Plaintiffs' Application was motivated by generalized opposition to gas stations, public pressure, and/or animus toward Plaintiffs' proposed development rather than any legitimate ordinance-based distinction between Plaintiffs and similarly situated applicants.

173. The City's failure to approve Plaintiffs' Application, as set forth above, violates Plaintiffs' constitutional rights to substantive due process and equal protection.

174. In addition to violating its own Ordinance, the City's failure to approve Plaintiffs' Application violates the MZEA for at least the following reasons:

a.      Under the MZEA, a decision rejecting, approving, or conditionally approving a site plan shall be based on the requirements and standards contained in a zoning ordinance, other statutorily authorized and properly adopted local unit of government planning documents, other applicable ordinances, and state and federal statutes, and the City's actions in this case violate that mandate, MCL 125.3501(4);

b.      Under the MZEA, a site plan must be approved if it contains the information required by the zoning ordinance and is in compliance with the conditions imposed under the zoning ordinance, other statutorily authorized and properly adopted local unit of government planning documents, other applicable ordinances, and state and federal statutes, MCL 125.3501(5).

175. Plaintiffs have been irreparably harmed and have no adequate remedy at law as a result of the City's breach of its duties because Plaintiffs are unable to lawfully use and develop the Property as provided by state law and the City's Ordinance.

## COUNT I
## DUE PROCESS VIOLATION

176. Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

34

75432013.8

177. The United States Constitution provides that no person shall be deprived of life, liberty, or property, without due process of law. U.S. Const. amend. XIV.

178. Plaintiffs have a constitutionally protected property interest in the use and development of the Property in accordance with its M-2 zoning classification.

179. Plaintiffs had a legitimate claim of entitlement to site plan approval arising from MCL 125.3501(5), which creates a mandatory entitlement to site plan approval where the application complies with the ordinance. The City's Planning Department staff confirmed the site plan's compliance with the Ordinance and recommended approval four times.

180. The City deprived Plaintiffs of their protected property interests without due process of law.

181. The Planning Commission failed to provide Plaintiffs with a meaningful opportunity to meet and overcome the actual basis for denial because no specific, objective, ordinance-based deficiency was ever identified.

182. The Commissioners invoked only generic "safety factors" unsupported by any evidence in the record, leaving Plaintiffs with no meaningful opportunity to address the actual grounds for denial.

183. The Planning Commission's failure to articulate any standards-based reason for denial rendered the process constitutionally inadequate.

35

75432013.8

184. The Planning Commission's denial was arbitrary, capricious, and irrational.

185. There is no rational relationship between the denial and any legitimate governmental interest.

186. Every qualified reviewing department approved the project or raised no concern. The City's own professional staff recommended approval.

187. Multiple Commissioners admitted on the record that the project meets all ordinance requirements yet voted to deny based on personal preferences and subjective fear unconnected to any objective standard.

188. The Planning Commission's conduct shocks the conscience: it deprived Plaintiffs of their right to use the Property for a lawful, by-right use despite full compliance with all Ordinance standards.

189. The City's failure to comply with its own Ordinance, and otherwise comply with law, was arbitrary and capricious and deprived Plaintiffs of their right to procedural and substantive due process under the United States Constitution.

190. In depriving Plaintiffs of their right to procedural and substantive due process, the City acted maliciously and willfully, with callous indifference to Plaintiffs' protected rights.

36

191.   The City's actions have caused Plaintiffs to suffer irreparable harm, effectively depriving Plaintiffs of the right to engage in the development of the Property and threatening the economic prospects of Plaintiffs.

192.   By reason of the foregoing, the City, acting through the Planning Commission and under color of state law, deprived Plaintiffs of their property interests without due process of law, in violation of the Fourteenth Amendment to the United States Constitution, actionable under 42 U.S.C. § 1983.

## COUNT II
## TAKINGS

193.   Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

194.   The Fifth Amendment to the United States Constitution, as it applies to the states through the Fourteenth Amendment, prohibits the taking of private property for public use without just compensation.  U.S. Const. amends. V, XIV.

195.   A municipal body may effect a regulatory taking when its actions deny an owner all economically beneficial or productive use of property, or impose unreasonable burdens in light of the economic impact, the interference with investment-backed expectations, and the character of the governmental action.

196.   A zoning ordinance as applied or on its face or other municipal actions may effect a taking of property through inverse condemnation.

37

75432013.8

197.   The City has systematically and intentionally taken measures against Plaintiffs to prevent the development of the Property in accordance with their rights, to the detriment of Plaintiffs and the general public interest in compliance with existing ordinances.

198.   The City's actions, as detailed above, have gone beyond mere regulation and have effectuated a taking of Plaintiffs' protected property interests.

199.   Plaintiffs have reasonable investment-backed expectations in developing the Property for its permitted use.   Gazebo and Agree Development entered into a purchase agreement contingent on site plan approval, and Plaintiffs invested substantial resources in engineering and traffic studies, and reasonably expected that a compliant site plan for a by-right use would be approved.

200.   The City's calculated and intentional attempts to delay and block Plaintiffs' development of the Property have been extraordinary and exceed any normally expected delays in the site plan approval process.

201.   The actions taken by the City have had significant economic impact on Plaintiffs, which impact continues and grows.

202.   The Planning Commission's conduct demonstrates that no convenience store with gas services could have been approved on the Property—regardless of compliance with Ordinance standards.   Commissioners repeatedly stated their personal opposition to gas stations and their desire to prevent such development,

75432013.8

notwithstanding the Application's compliance.  The City's actions thus resulted in a categorical deprivation of the Property's permitted use.

203.   The actions taken, as set forth above, are contrary to law.

204.   By reason of the foregoing, the City, acting through the Planning Commission and under color of state law, has taken Plaintiffs' property without just compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution, actionable under 42 U.S.C. § 1983.

## COUNT III
## EQUAL PROTECTION VIOLATION

205.   Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

206.   The Fourteenth Amendment to the United States Constitution guarantees citizens equal protection of the laws.  U.S. Const. amend. XIV.  Equal protection requires that similarly situated persons be treated alike when the government acts.

207.   The City's denial of the Application was arbitrary and invidious and violates Plaintiffs' rights to equal protection under the Fourteenth Amendment to the United States Constitution.

208.   Plaintiffs were treated differently by the City from other similarly situated applicants seeking site plan approval.

39

75432013.8

209. The City has approved other similarly situated convenience store and gas station developments, including:

    a.    the Fourteen Mile Kum & Go, approved April 24, 2023;

    b.    Ten Mile & Mound, approved April 8, 2024;

    c.    the Mound Road Sheetz, approved August 19, 2024;

    d.    the Van Dyke Sheetz, approved September 23, 2024;

    e.    the Groesbeck Gas Station, approved December 16, 2024; and

    f.    the Dequindre Road Sheetz, approved June 16, 2025.

210. The City intentionally and arbitrarily discriminated against Plaintiffs by denying their Application despite its satisfaction of every applicable Ordinance standard, while approving these similarly situated developments. The Planning Commission subjected Plaintiffs to six postponements, extra-Ordinance demands, and shifting requirements not imposed on any comparator applicant—then denied the Application based on generic "safety factors" unsupported by evidence. This differential treatment lacks any rational basis, fails to advance a legitimate governmental interest, and reflects illegitimate animus toward Plaintiffs' proposed development.

211. By reason of the foregoing, the City, acting through the Planning Commission and under color of state law, denied Plaintiffs the equal protection of the laws in violation of the Fourteenth Amendment to the United States Constitution, actionable under 42 U.S.C. § 1983.

## COUNT IV
## VIOLATION OF MZEA

212.   Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

213.   MCL 125.3501(1) provides that "[t]he local unit of government may require the submission and approval of a site plan before authorization of a land use or activity regulated by a zoning ordinance."

214.   MCL 125.3501(4) mandates that "[a] decision rejecting, approving, or conditionally approving a site plan shall be based upon requirements and standards contained in the zoning ordinance, other statutorily authorized and properly adopted local unit of government planning documents, other applicable ordinances, and state and federal statutes."

215.   MCL 125.3501(5) provides that "[a] site plan shall be approved if it contains the information required by the zoning ordinance and is in compliance with the conditions imposed under the zoning ordinance, other statutorily authorized and properly adopted local unit of government planning documents, other applicable ordinances, and state and federal statutes."

216.   The City's Ordinance, Section 22.16, sets forth the City's procedures and standards for site plan review.  The Planning Commission shall review a site plan "for space and orientation of buildings in relation to off-street parking and ingress and egress to the site; for safety convenience and adequacy of vehicular and

41

75432013.8

pedestrian circulation; for adequacy of landscaping and proposed site improvements and overall conformity to provisions of the Master Plan of the City of Warren for conformity of the uses to the district."

217. Section 22.16 further provides that the Planning Commission "shall approve a site plan only upon a finding that the proposed use will not, upon the facts known at the time of submission of the site plan, cause undue hardship or create unsafe or hazardous health, or safety conditions or create a nuisance condition to the detriment of adjoining land uses or the general public and only upon a finding that the plan contains the information required by this Ordinance and is in compliance with this Ordinance, the conditions imposed pursuant to this Ordinance, other applicable Ordinances and state and federal statutes."

218. Section 22.16 requires that "[a]ny required modifications shall be directed to the specific elimination of unsafe or hazardous health or safety conditions or the prevention of nuisance conditions, and shall be so noted."

219. Plaintiffs' site plan contained all information required by the Ordinance and was in compliance with all applicable conditions, ordinances, and statutes. The City's own Planning Department staff confirmed this by recommending approval four times.

42

220. Under the mandatory language of MCL 125.3501(5), Plaintiffs' site plan "shall be approved" because it was compliant.  The Planning Commission's denial therefore violated state law.

221. The Planning Commission did not base its denial on "requirements and standards contained in the zoning ordinance" as required by MCL 125.3501(4). Instead, it based the denial on generalized, subjective safety impressions unsupported by any evidence in the record.

222. No competent, material, or substantial evidence supports the conclusion that the site plan would "create unsafe or hazardous health, or safety conditions" within the meaning of Section 22.16.  The only competent evidence in the record— the professional traffic study, the MCDR approval, the GM/Kimley Horn review, and City staff recommendation—uniformly demonstrated that the site plan was safe and compliant.

223. The Planning Commission's denial is therefore ultra vires, unsupported by competent, material, or substantial evidence, and contrary to the mandatory approval provisions of both the MZEA and the City's own Ordinance.

## COUNT V
## DECLARATORY JUDGMENT

224. Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

43

75432013.8

225. "In a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of an interested party seeking such declaration, whether or not other relief is or could be sought."  28 U.S.C. § 2201(a); *see also* 28 U.S.C. § 2202.

226. An actual, justiciable controversy exists between Plaintiffs and the City concerning the lawfulness and constitutionality of the Planning Commission's denial of Plaintiffs' site plan.

227. A declaratory judgment is necessary and appropriate to resolve the parties' dispute concerning their respective legal rights and obligations.

228. Plaintiffs are entitled to a judicial declaration that:

    a. The City's denial of Plaintiffs' site plan violated Plaintiffs' rights to substantive due process under the Fifth and Fourteenth Amendments to the United States Constitution;

    b. The City's denial of Plaintiffs' site plan violated Plaintiffs' rights to procedural due process under the Fifth and Fourteenth Amendments to the United States Constitution;

    c. The City's denial of Plaintiffs' site plan constituted a taking without just compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution;

    d. The City's denial of Plaintiffs' site plan violated Plaintiffs' rights to equal protection of the laws under the Fourteenth Amendment to the United States Constitution;

    e. The City's denial of Plaintiffs' site plan violated the MZEA, including MCL 125.3501;

44

75432013.8

> f. The City's denial of Plaintiffs' site plan violated the City's Ordinance, including Section 22.16;
>
> g. Plaintiffs' site plan satisfies all applicable requirements and standards of the City's Ordinance and the MZEA; and
>
> h. Plaintiffs are entitled to approval of the site plan as a matter of law.

## COUNT VI
## CLAIM OF APPEAL

229. Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

230. Plaintiffs hereby claim an appeal from the April 13, 2026, decision of the Planning Commission to deny Plaintiffs' Application for site plan approval. (Ex. 12, 4/13/26 Planning Commission Minutes; Ex. 13, 5/1/26 Denial Letter.)

231. The Planning Commission's denial was a final determination under a zoning ordinance by a local commission within the meaning of MCR 7.122.

232. This administrative appeal is timely under MCR 7.122(B).

233. MCL 125.3606 provides for court review of decisions of the zoning board of appeals.

234. Plaintiffs file this action to preserve their rights in the event the ZBA denies the appeal or disclaims jurisdiction.

235. In the alternative, if no right of appeal of a site plan decision exists under the MZEA, Plaintiffs invoke their constitutional right to judicial review under Michigan Constitution article VI, § 28, which provides: "All final decisions,

45

findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial in nature, shall be subject to direct review by the courts as provided by law."

236.   The Planning Commission's denial of Plaintiffs' site plan constitutes a final quasi-judicial determination of a local governmental body affecting private property rights and is subject to judicial review by this Court.

237.   Plaintiffs are persons aggrieved by the Planning Commission's denial of the Application. *See Saugatuck Dunes Coastal Alliance v. Saugatuck Twp.*, 509 Mich. 561, 595; 983 N.W.2d 798 (2022); MCL 125.3604; MCL 125.3606.

238.   Plaintiffs participated in the challenged proceedings by taking a position on the contested decision.   Gazebo presently owns the Property and submitted the Application.  Agree Convenience signed and prosecuted the Application as representative of Gazebo.  And Agree Development has an agreement with Gazebo to purchase the Property, contingent on approval of a site plan for the proposed development of the Property.

239.   Plaintiffs have legally protected interests and rights that will undeniably be affected by the denial of the Application.  Gazebo has a protected interest in the use of its Property in accordance with current zoning.  *See Bonner v City of Brighton*, 495 Mich 209, 226; 848 NW2d 380 (2014) ("Explicit in our state and federal caselaw is the recognition that an individual's vested interest in the use and possession of

75432013.8

real estate is a property interest protected by due process."). And Agree Development has a protected pecuniary and property right in its agreement with Gazebo to purchase the Property. *See Beverly Hills Racquet & Health Club*, 2024 WL 3216459, at *5.

240. Plaintiffs can show special damages because "[b]eing unable to develop the [Property] as planned [is] 'an actual or likely injury' different from others in the community." *Id.* Plaintiffs stand to lose their anticipated use and development of the Property. And Agree Development stands to lose its contractual right to acquire the Property. This injury is immediate, concrete, and entirely distinct from any burden borne by others in the local community.

241. To be clear, these interests and harm caused by the denial of the Application have been held sufficient to make Plaintiffs "aggrieved" for purposes of filing this claim of appeal. *See id.* ("The lack of a current ownership interest is not dispositive under *Saugatuck Dunes*.").

242. As confirmed by the City's Planning Department staff, the Application contained the required information and complied with the applicable standards in the Ordinance.

243. The individual Planning Commissioners, including those that voted to deny the Application, admitted that the Application met all requirements under the Ordinance.

47

244.   The Planning Commission nevertheless denied the Application based on generic "safety factors" without identifying any unmet Ordinance requirement, competent evidence, or objective standard supporting denial.

245.   The Planning Commission's denial was not authorized by law because the Planning Commission lacked discretion to deny a compliant site plan for a permitted use based on generalized opposition, personal preference, or unsupported safety concerns.

246.   The Planning Commission's denial was not supported by competent, material, and substantial evidence on the whole record.

247.   The Planning Commission's denial failed to comply with MCL 125.3501 because Plaintiffs' site plan contained the required information and complied with the applicable Ordinance standards.

248.   The Planning Commission's denial failed to comply with the Ordinance, including Section 22.16, because the Application satisfied the applicable standards for site plan approval.

249.   The Planning Commission's denial also failed to comply with proper procedure because the Planning Commission did not make findings tied to the applicable Ordinance standards and did not identify any objective deficiency in the Application.

48

75432013.8

250. The Planning Commission's denial was arbitrary, capricious, and an abuse of discretion.

251. The Planning Commission's denial was not a reasonable exercise of municipal discretion because it was based on subjective opposition to the proposed use rather than the minimum objective standards set forth in the Ordinance.

252. Plaintiffs are entitled to reversal of the Planning Commission's April 13, 2026 denial and entry of an order requiring approval of the Application.

## COUNT VII
## SUPERINTENDING CONTROL

253. Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

254. In the event this Court determines that there is no right of appeal from the Planning Commission's site plan denial, Plaintiffs assert a claim for superintending control.

255. For the reasons set forth above, the City has deprived Plaintiffs of the rights protected by the United States Constitution under the color of law.

256. The City has refused to approve the Application.

257. The Application meets all of the City's ordinances in effect at the time of its submission and includes all the information required under the Ordinance.

258. Approval of the Application is not discretionary if the request meets the standards cited in the Ordinance. Under the MZEA, a site plan "shall be approved

49

if it complies with the requirements of the zoning ordinance.  MCL 125.3501(5). This mandate imposes a clear legal duty on the Planning Commission to approve a compliant site plan.

259.   The Planning Commission is subject to superintending control by this Court.

260.   Plaintiffs do not have another adequate legal remedy without the aid of an order of superintending control.  Money damages alone cannot remedy the ongoing deprivation of Plaintiffs' right to develop the Property.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendant City of Warren, and grant the following relief:

A.   Reverse the Planning Commission's denial of Plaintiffs' site plan for the Property;

B.   Order the Planning Commission to approve Plaintiffs' site plan for the Property;

C.   Declare that:

i.   The City's denial of the site plan violated Plaintiffs' constitutional rights to procedural and substantive due process under the Fourteenth Amendment;

ii.   The City's denial constituted a regulatory taking without just compensation in violation of the Fifth and Fourteenth Amendments;

iii.   The City's denial violated Plaintiffs' right to equal protection under the Fourteenth Amendment;

iv.   The City's denial violated the MZEA, including MCL 125.3501;

v.     The City's denial violated the City's Zoning Ordinance, including Section 22.16;

vi.     Plaintiffs' site plan complies with all applicable standards and Plaintiffs are entitled to approval as a matter of law;

D.     Award Plaintiffs their damages suffered as a consequence of the City's unlawful actions;

E.     Award Plaintiffs their costs, including attorneys' fees, pursuant to 42 U.S.C. § 1988; and

F.     Grant Plaintiffs such other and further relief as this Court deems just, equitable, and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiffs hereby demand a trial by jury as to all claims for which such a right exists.

Dated: May 27, 2026            Respectfully submitted,

By: */s/ Brandon J. Wilson   /*
Michael P. Hindelang (P62900)
Brandon J. Wilson (P73042)
Brian R. Hamilton (P88135)
Honigman LLP
660 Woodward Avenue
2290 First National Building
Detroit, MI 48226
(313) 465-7000
mhindelang@honigman.com
bwilson@honigman.com
bhamilton@honigman.com

*Attorneys for Plaintiffs*

51

75432013.8